Our last case today, number 241328 and 241335, Coco Rico, LLC v. Universal Insurance Company. Counsel for Appellant Cross Appellee, please introduce yourself on the record to begin. Julian Rivera Aspinall. Your Honors, three minutes for a rebuttal. Yes, three minutes. Thank you. After a four-day jury trial, a verdict was issued in favor of plaintiff. Plaintiff requested an amended judgment so that attorney fees and prejudgment interest would be also awarded. With one sentence, the district court said no attorney's fees, no prejudgment interest. What was the reasoning that the court used for that? We don't know. So if we look at the overall personality of the case, we have to reach to the conclusion that the judge committed abuse and discretion in not awarding attorney's fees and prejudgment interest in accordance with Puerto Rico rules of civil procedure. What do I mean by the overall personality of the case? Well, the judge had before him, the first thing the judge had before him was the complaint. I'm not talking about things that happened before the complaint. I'm talking about since the case started, the complaint. In the complaint, there were 58 allegations, affirmance in the complaint. Out of the 58, defendants said no to 54 of them. They admitted two of them, which was directly related to universal insurance. And the other two was that, yeah, the insurance policy was paid. They had 77 affirmative defenses raised. This was a case that had to do with the business insurance coverage. In other words, a coverage that Puerto Rico had purchased. So it's a matter of deciding if the coverage applied or not. And that decision had been affirmatively made by counsel. I mean, you've got two problems. And you know that. I understand. This won't surprise you. One is that we've never, sure, it would have been better if the district court had explained itself, written something, that would have been good. But we've never said they have to, particularly in a situation where these are quintessential discretionary calls by the judge who, I gather, had this case from the very beginning, then sat at the trial and just decided that the factors that would support awarding pre-judgment interest and attorney's fees just don't apply. I mean, so what?  Why should, you're not, are you suggesting that we should vacate because the court did not write a decision? No, Your Honor. I suggest that we look at the case of Dock versus Pritzker. And this honorable court said, in making discretionary judgment, a district court abuses the discretion when an irrelevant factor is serving a significant weight is overlooked, or when an improper factor is accorded significant weight, or when the court considers the appropriate mix of factors, but commits a palpable error of judgment in calibrating the decisional skills. In this case, you have to look at, first, look at the verdict. Look what the verdict in this case made. It said that there was actually a breach of contract, which is, that doesn't mean that we're entitled to attorney's fees, but it also said that Universal Insurance acted in bad faith. But counsel, that all goes, that's a judgment on how they performed before the litigation began. That doesn't, that bad faith finding doesn't say anything about the way in which they conducted the litigation once it began. Those seem to be two entirely separate issues. Well, if you look at how the litigation began, I started already mentioning the complaint. So, let's look at processes that happened during the litigation process. We had a pretrial settlement conference. As part of the pretrial settlement conference, and discussions were made to try to settle the case, and Coco Rico made a settlement offer way below the policy limits. Universal Insurance, instead of accepting that settlement offer, or trying to negotiate in good faith, basically said no. So, what happened next? When a jury verdict comes, and a jury verdict comes way above what the settlement offer was for, and which is, by the way, way above the policy limits, Morales versus Automatic Vending says that the insurance company is liable for the full judgment. That's just one example there. In this case, being basically a money judgment matter, what Universal Insurance should have done was admit liability. But what did it do? It did not do that. What they did, and that's why you have to look at the overall, what happened overall in the case. What they did not do in this case is that they started arguing that in this case, they owed zero, because there had been a material misrepresentation of facts in the case. To me, that is a way of trying to argue obstinately. So, not only the jury findings, but trying to argue that they don't know any money, when they had already admitted that they owed at least $203,000. And later, when the trial comes, now they say, oh, no, no. Now we owe nothing, because there was material misrepresentation of facts. And they bring one witness, which was the Universal Insurance principal person for the case. And what does he discuss? Instead of saying to the jury, jury, we are not in agreement on the differences that we owe with the plaintiff. Instead of making that type of argument that we need your assistance in trying to reach a number, what does he do? He starts talking about the page in the policy that talks about material misrepresentation of facts. Closing arguments then, what does broader counsel do? Instead of arguing, we have differences in opinion on the monies. Universal Insurance doesn't owe a penny because material misrepresentation of facts were made. So, that conduct, if you look at the whole conduct, since we don't have the benefit of what the judge thought. If you look at that whole conduct, without a doubt, that conduct shows that Universal Insurance did not act in good faith. As they were supposed to act when they were the ones who had provided insurance policy for the plaintiff. They acted obstinately throughout the whole process of the case. And basically that resumes our argument. Judge Hoffman, can I ask a procedural question? There's the consequential damages issue which comes up. Should counsel be responding to that now or is he going to get a chance to? That's something I was thinking because you're also cross appeal. So, whatever time you have now, plus your three minutes, you're reserved if you need to respond to the cross appeal. Okay. Regarding consequential damages, the case is? We're going to deal with that now? You're going to deal or you want to wait for? As you, as you, since I have time, I can use my time wisely. But you don't know what counsel's going to say. So, let's reserve your time. So, you have six and a half minutes. Thank you. You'll be responding. Thank you. Thank you, your honors. And because you're also appealing. So, what I would suggest is first you address their argument, their appeal, and then reserve whatever time you need. You have an opportunity to reserve time. So, let's do it this way. When you're finished with arguments, say you're finished with it, and then we'll hear from them. And then you can reply to your. Very well. May it please the court. I'm sure there's been more complicated cases, but more parties and more cross appeals. So, okay. Thank you. May it please the court. Victor Acevedo on behalf of Universal Insurance Company. As to trial obstinacy, because that is what the court should be looking at, trial obstinacy, not this whole pre-litigation matter that's being brought up. The record supports that there is no obstinacy on the part of Universal. Why? You have Universal prevailing in dismissing claims. The insurance claims was dismissed. You have Universal at trial stipulating to evidence, stipulating to a witness, even winning a Rule 50 argument on the advancement claim. So, Universal's personality or the personality of this litigation has been that Universal has tried in good faith to litigate this case and not to be obstinate in any way or try to use delay tactics. On the contrary, the record supports that Universal has been effective and efficient. Let me ask this also, counsel, because obviously it's the conduct of trial. So, if there's any delay tactics or whatever happened, the district court, I don't know if you're the attorney below, but could have sanctioned the attorney or charged the client with vexatious litigation or taken some further action and because an attorney is under the code of judicial conduct, you're supposed to move the case along. You're not supposed to engage in that conduct. So, does that favor your argument? It does because there is no finding. There's no finding whatsoever of any of that kind. It would have been against the attorney more than the client itself. Right, because that's what we need to look at. What is the conduct of the attorneys? And there's no record of that. With the court's permission, I'd like to proceed to discuss our points being brought up in our actual appeal. Okay, let me then do this because you responded to what they argued. Let's see if they want to use their rebuttal time to respond to what you briefly said, and then we'll go to your appeal. Very well. I should have thought of this before. You have three minutes reserved. You spoke briefly, so I think you probably have to respond quicker. Let's talk about the stipulated testimony. The stipulated testimony cost Coco Rico $16,000 to get. It was stipulated the day before the witness had to appear and sit before the jury to testify. And what did they stipulate? They stipulated that if this person would sit down to testify, this is what he would have said, and he's an expert in that matter. They didn't stipulate that it was a 764-day restoration period. Again, they want certain arguments, and we recognize that, but at the same time, the law is the law. They have to do an adjustment within 90 days. So they have to do an adjustment in 2019. So how come three years later, when they answer their complaint, they say, oh, we have to look again at the claim to see if it's covered. That's vexatious litigation. That's wasting time, not only for the court, but for the attorneys and respectfully for this honorable court. Okay, but you mentioned now vexatious litigation, which I mentioned. If there was vexatious litigation, the court can raise that trasponte under the statute, or you can request that they make a finding, but that did not occur below. No, it did not. That's why we stick to it. So doesn't that benefit on behalf of opposing counsel or the opposing party? That's why, since we have no idea why the judge made in one sentence that ruling, that's why we have to look at the overall circumstances of the case, and that's why we maintain that there was abuse and discretion. Counsel, so what I'm just trying to understand, what is your view of your best argument, that they should have admitted to coverage? Is that what you're saying? Coverage, they should have not litigated that there was no coverage. What they should have said was, let's try to put in the hands of the jury what the real number of the— Just focus on damages. Yeah, focus on damages, and there's case law to that effect. One of those cases is Morales v. Automatic Vending, and then there's additional case law. But why isn't the district court or the trial judge here in the best position to decide whether this is the kind— I'm sure you made this argument below. Why isn't the trial judge in the best position to decide whether this is the type of case where coverage should have been stipulated versus not? It is for the trial court to decide, but unfortunately, we don't have the knowledge of what went through the judge's mind to make that decision. So what we have to do is we have to look at all the instances that happened within the case, not before the case like Brother Counsel said, but within the case of why there was an error made by the judge in this case. Thank you. Okay, and you have three minutes, 15 seconds left to respond. And then, Mr. Acevedo, you can bring your cross appeal. Thank you, Your Honor. So you're going to reserve any time now for rebuttal. And actually, the cross appeal, I think it's—you already used some time, so. I was—1336 is what I saw when I left. So you still have 1336. Okay, I'll stick to that. So, Your Honors, Universal agrees that the record supports that there should be a jury award for $686,098. What we submit to you is that the record does not support the consequential damages and the record does not support a finding of damages up to $750,000. Talking first about the consequential damages, it is admitted by counsel for plaintiffs that this is additional business income loss that happened after the restoration period, which runs from September 2017 to November 8, 2019. So what they're saying is, from November 9, 2019 on, business income loss, that is the consequential damages. And the only evidence that they presented in support of that is the testimony of Mr. Hahn. And here's the problem with that testimony. Mr. Hahn, during his testimony, admitted that he delegates the management of Coco Rico LLC to management teams. And not just that, he specifically named two people that do that, Martin Salmo and Maria Cerame. Neither of those people testified. Well, he's the owner. I mean, he is the company, right? And he did testify that there were hundreds of thousands of dollars of losses in this post-restoration period. Why can't, why isn't that enough? Because you have to lay the foundation. Plaintiff had the burden of laying the foundation on what that is based. So that basically is 701 territory. That's a lay witness opinion. It's him opining based on his, allegedly. Why is it an opinion, counsel? It's just fact. I'm sorry. I don't understand why that would be an opinion. You've got the owner of a business talking about how much money he thinks he's lost. Why is, that's just a factual matter. Why are you characterizing it as an opinion? Well, because it is an opinion because you're extrapolating how much you would have lost throughout the years. I thought he was talking about how much he actually had lost. No, so the business income is like, that's why they brought an expert. They're opining as to what is the loss that they intend, they believe they did not receive because of what happened. So business income loss is like an opinion of this is what I would have made had this not happened, had I continued to operate. So there's two ways of entering. We respectfully submit two ways of entering that type of testimony is either lay witness opinion or expert testimony. They provide a competent evidence of expert testimony for the $686,098. The problem is for that additional amount, they rely on Mr. Hahn. And they never went about doing their duty of laying a foundation. How is it that Mr. Hahn knows this? It is insufficient for just someone to take the stand and say, hey, I own a bunch of companies. I oversee them, all of them. I delegate everything to my management teams. I have two people that does this work and yet intend to rely on his abstract statement that it cost, I mean, this cost us several hundred thousands of dollars. And I made the calculations in my head. So had, for example, Mr. Hahn testified and he said, I have all the, I delegate this, but on a weekly basis, just theoretical, on a weekly basis, I meet with my department heads and I get these spreadsheets and I meet with my accountant regularly. I balance everything and I've been doing this for the last five, 10, 15, 20 years regularly. And this is how I know this. That would have gone in. That is exactly the kind of foundational testimony that would have made that kind of testimony admissible and competent. And had that come in with these consequential damages, you would not be here. I would have a much harder. You'd probably find a way to be here. You shouldn't be here because of the other claim. It'd be more difficult. But yes. You might be accused of being obstinate. Right. I don't want that accusation. But that's basically the gist of it. There's lack of foundation. There's a, I think the magistrate judge refers to $130,000 figure for consequential damages. Where did that come from? That comes from nowhere. Mr. Hahn never said that figure. The record reflects that at one point the attorney says $130,000 and the magistrate repeats it. But if you look through the record, Mr. Hahn never said $130,000. That's hundreds of thousands of dollars I made the calculation in my head. But there's no specific figure. And even if there were such a specific figure in the record, our position would still be there is no foundation. Plaintiff, you failed in your duty to lay the foundation to have this be competent evidence of consequential damages. And the court should have used its gatekeeping function and not allowed that to go into the jury. That's our position. When you say gatekeeping, that's expert testimony. Right. I'm using it more as an analogy, not as a tire or anything like that. I'm saying like they should have ruled 50 and not allowed it to continue on to the jury. They should have required more of plaintiff before making that, allowing the jury to decide that amount. So if we agree with you now, we should enter the rule 50 should have been granted, and that takes care of that. That's correct. And the rest of the verdict stands. Well, actually, as to the rest of the verdict, we're saying that the $750,000 should be remitted to $686,098. And why do I say that? Because the competent evidence that was presented was the testimony of Mr. Iglesias. And Mr. Iglesias, who did a thorough analysis, concluded it's $686,098. What does the magistrate do?  Yes, ma'am. Just because you did lay this all out, so we're familiar with the figures and we understand your argument. But I think the argument on the other side is the jury can't award more. And $750,000, that was the policy limit. That's the maximum in the policy. Right. So why couldn't the jury in this case, having heard everything that it did in trial and the delay in payment, why couldn't the jury award the policy limit? Why is that something that actually really requires us to intervene after the fact, after a jury trial? Well, two reasons. Because a business income throughout the trial was reduced to a mathematical calculation by an expert. And the two reasons that the court stated for the record that it would not be remitting to $686,098 is because there are two emails in the record, Exhibit U and Exhibit Y. When you look at those emails, the Exhibit U is written by Mr. Lebron, who is a producer. He admits during his testimony that he does not have knowledge of business income because he did the property claim. And when you look at the context of the email, it is more as a claim. Oh, you owe us $900,000. And here's the problem with that email, the date of that email. That email is November 12, 2019. The restoration period here runs from September 2017 to November 8, 2019. So plaintiff is making statements in closing in the pretrial and putting on the stand a witness that says the business income is the amount that I've stated many times, but then tries to rely on an inconsistent email that was evidently discarded by their expert. That figure, that $900,000 is evidently discarded by their expert because otherwise it would make no sense. How are you going to sit an expert that says this is what it's owed and then say, oh, no, but there's an email that says $900,000 that was written three days after the restoration period? But I think I'm trying to ask you a slightly different question. I understand your point that the expert limited it to $686,000. I think that's a precise number, but the jury can give more. Our case law says the jury can give more if it decides to. And so, and I understand your argument about the two exhibits, but at the end of the day, we're just here. We can affirm on other grounds. Why must we overturn what the jury did here after hearing all the evidence and knowing that the policy limit is $750,000? Because there is no evidence in the record that would allow the jury to give anything more than $686,000. There's nothing in the record that it costs them more, that they are entitled to that. All the evidence supports, the admissions by counsel, everything that has been presented, even their closing argument is that that figure is no more than $686,000. So if the jury, by the jury giving them more, they are basically basing their verdict on nothing. Even if it had been one more cent? Even one more cent would be on nothing. Counsel, you have about three minutes left. Are you going to reserve it for rebuttal or do you want to continue? Well, if the panel has any other additional matter that they would like for me to address. Well, just very quickly. Thank you. This is really more for opposing counsel, but I think you take, they, I guess it's in their reply brief. They did not notice this in their appeal. They argue that the judge erred in reducing the jury verdict from $800,000 plus to the policy limit. I think it's your position that they have, they can't make that argument. It was not part of the notice of appeal. They raised it for the first time in their reply brief. It's really not an appropriate way to raise the issue. Is that your position? That is true. We have argued in our brief that they have, they waived that argument by not bringing it initially. All right. Thank you. You have two minutes, 15 seconds for rebuttal. Thank you. Counsel, you have about three minutes, 15 seconds to respond for your remaining time. If I may, please, the court. Defendant's exhibit Y was brought before the jury. Defendant's exhibit Y is very important because it summarizes the efforts of 15 people hired by Cocorico to try to put a value to the claim. The amount that they came to for that amount was $901,976. That means that that amount was before the jury to consider. So it's not correct that only what CPA Carlos Iglesias says is the only thing that could be considered. That amount of $901,976 could be considered. The jury is free to select highest figures for which there's adequate evidentiary support. Where's the higher evidentiary support? That's what counsel's arguing. I'm sorry? Where do you have the higher evidentiary support for a higher figure? The testimony of their expert, Margarita Rivera, she explained the way that the numbers were figured out and how they came up to the $901,976, how the universal came to $203,338. So all this was before the jury. So the jury after four days of trial, after considering direct and circumstantial evidence, decided on the number that they thought was appropriate for a jury verdict in this case. Counsel, on the consequential damages issue, was there anything in the record that would support the jury award other than Mr. Hahn saying that each year it's hundreds of thousands of dollars that it costs us not to be down here? I'm not aware of anything else in the record beyond that testimony. Is that an inaccurate view of the record? Well, I don't want to lie to the court, but I do remember that the number of $130,000 per year was discussed. I think just counsel said it, though. Do you know if it's anywhere actually in the record from the mouth of a witness? I cannot tell you that at this moment, Your Honor. Okay, but what about counsel's argument about Rule 701? In my hypothetical, Mr. Hahn did not – he just simply spelled the numbers. He didn't explain how he reached those numbers or the basis for those numbers, correct? Mr. Hahn had a few hours of testimony, and he explained many aspects of his business. And one of the things that he explained is the losses and the incurred expenses that he was incurring because of having to hire a company in the United States to manufacture a product for him, having to send material to the States, and then having to pay for that finished product. Obviously, there could be a monetary sum for that, but the question is, did he explain – again, I'm not referring to expert testimony methodology, but he explained how he was able to conceive those numbers and support those numbers. No, but as a business owner, he should be able to know the numbers that his business runs, particularly since he's the one that controls the checkbook. Okay, thank you. Mr. Acevedo, any parting thoughts? You're the last thing remaining between argument and everybody's lunch, including yours. Just basically, Your Honor, counsel for plaintiffs made a concession during trial, and you'll be able to see it on the record that the business economic damages that we're talking about were consequential is based on Mr. Hahn's testimony. There's nothing else. And he never said the $130,000, and there's no foundation as we have stated before. And as to Judge Rickleman's question, we believe we would submit respectfully that in the nature of economic damages, jury discretion should be more curtailed because it is a mathematical endeavor. That is why expert testimony was presented. And that's why we stand by the argument that, in this case, the record is devoid of anything that would justify anything more than the expert testimony that was presented. Okay, thank you, counsel. Court is adjourned until tomorrow, 930 a.m. All rise.